UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BETHANY DePAUL, ARLENE QUARANTA, MEREDITH QUARANTA, MARGARET MERIWETHER, MINAH McBREAIRTY, and JEFFREY McBREAIRTY, *individually and on behalf of all others similarly situated*, <br>     *Plaintiffs*, <br><br> v. <br><br> KIMBERLY-CLARK CORPORATION, <br>     *Defendant*. | CASE NO. 3:24-CV-271 (KAD) <br><br><br><br> AUGUST 7, 2025 |

**MEMORANDUM OF DECISION**
**RE: DEFENDANT'S MOTION FOR PROTECTIVE ORDER (ECF NO. 47)**

Kari A. Dooley, United States District Judge:

Through this putative class action, Plaintiffs Bethany DePaul, Arlene Quaranta, Meredith Quaranta, Margaret Meriwether, Minah McBreairty, and Jeffrey McBreairty ("Plaintiffs") bring claims against Defendant Kimberly-Clark Corporation, arising out of Defendant's alleged use of PFAS chemicals in its manufacturing processes in and around New Milford, Connecticut. *See* Third Amended Complaint ("TAC"), ECF No. 41. On August 6, 2024, Defendant filed a fully dispositive Motion to Dismiss. ECF No. 35. On March 12, 2025, Defendant filed the instant Motion for Protective Order, which seeks: (1) a stay of discovery pending resolution of the Motion to Dismiss; and (2) clarification that discovery has been bifurcated and once resumed, is limited to issues relevant to class certification. *See* ECF Nos. 35, 47. Plaintiffs oppose the motion. *See* ECF No. 48. For the reasons that follow, Defendant's Motion for Protective Order is **GRANTED in part and DENIED in part**.

**Allegations and Procedural History**

The Court assumes the parties' familiarity with the allegations and circumstances underlying this case and recites herein only those relevant to the instant Motion for Protective Order.

For over 50 years, Defendant has maintained a paper mill in New Milford, Connecticut, which manufactures a variety of products for popular brand names like Kleenex, Scott, and Huggies. According to Plaintiffs, Defendant used PFAS chemicals in its manufacturing processes for decades. Such processes resulted in the release of PFAS chemicals into the environment through Defendant's stack emissions, and through the creation of "short fiber paper sludge," a hazardous PFAS-contaminated waste byproduct that Defendant disposed of at the nearby Kimberly-Clark Landfill. Plaintiff claims that the Kimberly-Clark Landfill leaches significant, dangerous levels of PFAS chemicals into surrounding water supplies. In turn, current and former residents of New Milford suffer the consequences of Defendant's improper use, storage, emittance, discharge, disposal, and/or distribution of PFAS chemicals, which has caused contamination throughout the area.

On August 6, 2024, Defendant filed a Motion to Dismiss the Second Amended Complaint.[1] ECF No. 35. On February 10, 2025, Plaintiffs served Defendant with 15 requests for production and 12 interrogatories. On February 14, 2025, Plaintiffs served Defendant with a request for permission to enter the Kimberly-Clark Landfill, and conduct various testing and inspection thereon. On March 12, 2025, Defendants filed the instant Motion for Protective Order. ECF No.

---

[1] The parties and the Court have agreed that Defendant's Motion to Dismiss shall be considered as applied to the TAC, which was filed subsequent to the Motion to Dismiss. *See* ECF No. 40.

47. On April 2, 2025, Plaintiffs filed their objection. ECF No. 48. On April 16, 2025, Defendants filed their reply brief.[2] ECF No. 49.

**Standard of Review**

Rule 26(c) provides, in relevant part, that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery[.]" Fed. R. Civ. P. 26(c)(1)(A). "[A] request for a stay of discovery pursuant to Rule 26(c) is committed to the sound discretion of the court based on a showing of good cause." *Stanley Works Israel Ltd. v. 500 Grp., Inc.*, No. 3:17-CV-01765 (CSH), 2018 WL 1960112, at *2 (D. Conn. Apr. 26, 2018) (internal quotation marks omitted). Importantly, "[t]he party seeking the stay bears the burden of showing that good cause exists for its request." *Id*.

Generally, it is not the practice of this Court to stay discovery upon the filing of a motion to dismiss. *See Kollar v. Allstate Ins. Co.*, No. 3:16-CV-1927 (VAB), 2017 WL 10992213, at *1 (D. Conn. Nov. 6, 2017) ("[T]his Court's regular practice normally requires the parties to commence discovery, even while a motion to dismiss is pending."). Indeed, the Court's Standing Order on Pretrial Deadlines states that "[t]he filing of a motion to dismiss *shall not* result in a stay of discovery or extend the time for completing discovery." ECF No. 3 (emphasis added). However, "[w]here a party seeks a stay of discovery pending resolution of a dispositive motion, the Court considers (1) the strength of the dispositive motion; (2) the breadth of the discovery sought; and (3) the prejudice a stay would have on the non-moving party." *Stanley Works*, 2018 WL 1960112 at *2 (internal quotation marks omitted). In assessing the second factor, the Court may consider the burden of responding to discovery. *See, e.g., Country Club of Fairfield, Inc. v.*

---

[2] On April 29, 2025, Plaintiffs sought permission to file a sur-reply, which the Court denied. *See* ECF Nos. 50, 51.

*New Hampshire Ins. Co.*, No. 3:13-CV-509 (VLB), 2014 WL 3895923, at *3 (D. Conn. Aug. 8, 2014).

**Stay of Discovery**

Defendant asserts that a stay of discovery is warranted, because: (1) the pending Motion to Dismiss raises substantial grounds for dismissing the entire case; (2) requiring Defendant to respond to Plaintiffs' onerous, merits-based discovery requests would impose significant burdens on Defendant; and (3) Plaintiffs will not face any prejudice if discovery is stayed until after the Court has decided the Motion to Dismiss.  Plaintiffs counter by arguing that: (a) Defendant's belief in the success of its Motion to Dismiss does not override this District's default practice that a motion to dismiss does not stay discovery; (b) their discovery requests are narrowly tailored and discovery has not been bifurcated; and (c) they will be unfairly prejudiced by any stay of discovery. On balance, the Court agrees with Defendant.

<u>The Strength of Defendant's Motion to Dismiss</u>

The Court begins its analysis by considering the strength of Defendant's Motion to Dismiss.  "In evaluating this factor, courts will look to see whether there are 'substantial arguments for dismissal,' or, stated differently, whether 'there has been a strong showing that the plaintiff's claim is" without merit.  *Stanley Works*, 2018 WL 1960112 at *3 (quoting *Hong Leong Fin. Ltd.*

4

*(Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013)).[3] Here, Defendant is seeking dismissal of the TAC principally on the grounds that it does not plausibly allege any causal connection between Defendant's manufacturing processes and the purportedly "elevated" levels of PFAS chemicals in New Milford's soil and/or water supply, which Defendant's argue is fatal to all of Plaintiffs' claims.[4] These arguments are substantial. Indeed, Defendant argues convincingly that the allegations in the TAC do not tie Defendant to Plaintiffs' harm, much less that Defendant's conduct was a "substantial factor" in such harm. Moreover, even assuming, as Plaintiffs' posit, that testing from the nearby groundwater and surface water permits Plaintiffs to plausibly assert that indeed, waste from the Kimberly-Clark Landfill contains PFAS, factual support as to causation remains scarce – particularly given that it appears the PFAS levels in New Milford's drinking water are roughly the same as those found in cities all across Connecticut. In sum, without resolving these or any other issues raised in the Motion to Dismiss, the Court

---

[3] The district courts in this Circuit are not uniform in their analysis of this factor. For example, in *ITT Corp. v. Travelers Cas. & Sur. Co.*, No. 3:12-CV-38 (RNC), 2012 WL 2944357, at *2 (D. Conn. July 18, 2012), a case cited by Defendant, the court noted that "[a] stay of discovery is appropriate pending resolution of a potentially dispositive motion where the pending dispositive motion 'appears to have substantial grounds or, stated another way, *does not appear to be without foundation in law*.'" (quoting *Johnson v. New York Univ. Sch. of Educ.*, 205 F.R.D. 433, 434 (S.D.N.Y. 2002)) (emphasis added; alterations omitted); *see also, e.g.*, *Boost Oxygen, LLC v. Rocket Oxygen*, No. 3:16-CV-1992 (VLB), 2017 WL 10768482, at *1 (D. Conn. Mar. 21, 2017) (articulating the same principle). However, at least one court in this Circuit has rejected the "without foundation in law" threshold as inappropriately "encompass[ing] a motion with little chance of succeeding—arguably equivalent to the 'nonfrivolous' benchmark that prevents the triggering of a sanction under Fed. R. Civ. P. 11(b)(2)," and thus declined to apply such "an overly lenient standard for granting motions to stay all discovery [that] is likely to result in unnecessary discovery delay in many cases." *Hong Leong*, 297 F.R.D. at 72 (quotation marks omitted). Given the Court's broad discretion in determining whether to issue a protective order, *see, e.g.*, *Bryant v. City of Hartford*, No. 3:17-CV-1374 (VAB), 2020 WL 3619789, at *4 (D. Conn. July 2, 2020), the Court is not strictly bound by either formulation. But even if the Court concludes that Defendant's Motion to Dismiss "does not appear to be without foundation in law," a stay of discovery is not automatic. Rather, "[t]he caselaw makes it clear that no one factor is dispositive of a discovery stay motion" and "[e]ven if a motion to dismiss 'appears to have substantial grounds,' a stay of discovery pending the outcome of that motion is appropriately denied where, . . . the other factors 'disfavor a stay.'" *Morgan Art Found. Ltd. v. McKenzie*, No. 18-CV-4438 (AT) (BCM), 2020 WL 6135113, at *3 (S.D.N.Y. Oct. 18, 2020) (quoting *Computer Assocs. Int'l, Inc. v. Simple.com, Inc.*, 247 F.R.D. 63, 69 (E.D.N.Y. 2007)). In any event, these varied articulations for assessing the "merits" factor are not so different as to counsel alternative outcomes in most cases, to include this case, and the Court resolves the instant motion without regarding any one formulation as controlling.

[4] The Motion to Dismiss raises several additional arguments for dismissal, including more specific arguments as to each of Plaintiffs' claims. The Court does not address the potential merits of each asserted ground for dismissal and identifies only those that the Court finds particularly "substantial," thus supporting a stay of discovery.

5

concludes that Defendant has presented "substantial arguments for dismissal," and made a strong showing that some or all of Plaintiffs' claims are without merit. *Stanley Works*, 2018 WL 1960112, at *3. Accordingly, this factor weighs in favor of a stay.

<u>The Breadth of the Discovery Sought and the Burden of Responding to the Discovery</u>

Next, Defendant argues that permitting discovery to proceed while their meritorious, fully dispositive Motion to Dismiss is pending would be unduly burdensome.[5] Here, Plaintiffs have already served Defendant with discovery requests seeking a broad range of materials regarding Defendant's New Milford manufacturing facility, as well as the Kimberly-Clark Landfill, spanning decades of operations. And Plaintiffs argue that these requests are appropriate at the class certification stage, even if the Court were to agree with Defendant that discovery has been bifurcated. This issue aside, Plaintiffs seek certification of two separate classes, and the Court generally accepts that class certification discovery—particularly involving the use of experts (*see* ECF No. 44)—is likely to be both significant and time-consuming.[6] *See Sharma v. Open Door NY Home Care Servs., Inc.*, 345 F.R.D. 565, 569 (E.D.N.Y. 2024) ("Permitting class and collective-based discovery would thus serve to create an unnecessary burden should Defendant's motion to dismiss be resolved in its favor."). Therefore, the Court finds that this factor also weighs in favor of a stay.

---

[5] Defendant further argues that Plaintiffs' merits-based discovery requests go beyond the scope of permissible discovery, which is currently limited to class certification issues, and is therefore unduly burdensome. The Court addresses the parties' dispute over bifurcation below.

[6] Indeed, even assuming that the parties have not engaged in any such discovery during the pendency of the Motion to Dismiss and the instant Motion for Protective Order, their proposed (and adopted) case management plan contemplates a 6.5-month period for class certification discovery. *See* ECF No. 44.

<u>The Prejudice to Plaintiffs If a Stay Were Granted</u>

Lastly, while the Court appreciates that Plaintiffs want to proceed expeditiously with pursuing their claims, the Court does not agree that Plaintiffs will face significant prejudice if a stay is entered.

Plaintiffs first argue that a stay of discovery would allow Defendant to back out of the agreed-upon case management plan and unilaterally shorten the time for Plaintiffs to complete discovery.  The Court is not persuaded, insofar as the parties clearly negotiated the revised case management plan with fundamentally different understandings as to its scope, *see infra* at 7–8, and in any event, Plaintiffs may seek a further extension of the deadlines in the case management plan as necessary and appropriate[7].  Plaintiffs also argue that a stay of discovery would prolong their ongoing exposure to PFAS contamination.  This too is unpersuasive.  First, it is well-settled that delay alone "cannot itself constitute prejudice sufficient to defeat a motion to stay discovery." *O'Sullivan v. Deutsche Bank AG*, No. 17-CV-8709 (GWG), 2018 WL 1989585, at *9 (S.D.N.Y. Apr. 26, 2018).  Moreover, this argument assumes that Plaintiffs have indeed been exposed to elevated PFAS levels due to Defendant's manufacturing processes (*i.e.*, an issue central to this litigation, and one which Defendant disputes), and that a stay of discovery will only delay resolution of the entire case.  However, as discussed above, Defendant's Motion to Dismiss, if granted, may be fully dispositive of the entire case, so this argument essentially begs the question posed with respect to the first factor.  Thus, this factor is, at best, neutral.

**Violation of the Operative Case Management Plan**

On December 26, 2024, the parties jointly proposed a revised case management plan, setting forth various discovery deadlines (including those relating to both class certification and

---

[7] It goes without saying that the Court is not bound by the parties' case management plan.

7

merits discovery) temporally tied to the Court's ruling on Defendant's pending Motion to Dismiss. *See* ECF No. 44. On January 7, 2025, the Court approved, adopted, and so ordered the parties' revised case management plan. ECF No. 45. Now, Defendant asserts that Plaintiffs have violated the operative case management plan by prematurely seeking merits discovery, notwithstanding that pursuant to such plan, class and merits discovery have been bifurcated. To that end, Defendant claims that even if the Motion to Dismiss is denied, it should be relieved from its obligation to engage in Plaintiff's premature merits discovery. Specifically, Defendant seeks clarification from the Court that class discovery and merits discovery have been bifurcated. Conversely, Plaintiffs urge that the operative case management plan contemplates class and merits discovery as running concurrently, and that discovery has not been—and should not be—bifurcated.

The Court finds Defendant's request in this regard quite odd. The Court is ill-equipped and otherwise disinclined to interpret the meaning and scope of the parties' *jointly proposed* case management plan, which simply sets forth discovery deadlines that the Court, upon review, found to be reasonable and adopted. And in light of the Court's decision herein, it need not and will not reach these issues. All discovery in this case has now been stayed pending the Court's resolution of Defendant's Motion to Dismiss. Moreover, if the Motion to Dismiss is denied in any respect, the parties will be required to submit another revised case management plan proposing dates certain upon which to complete the various stages of discovery as they pertain to any remaining claims. During that process, they can confer in the first instance on the apparently misapprehended issue of bifurcation.

**Conclusion**

For all of the foregoing reasons, Defendant's Motion for Protective Order is **GRANTED in part and DENIED in part**.  Discovery is hereby **STAYED** pending the Court's adjudication of Defendant's Motion to Dismiss.

**SO ORDERED** at Bridgeport, Connecticut, this 7th day of August 2025.

                                       /s/ Kari A. Dooley
                                       KARI A. DOOLEY
                                       UNITED STATES DISTRICT JUDGE